1. IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF SOUTH CAROLINA
   COLUMBIA DIVISION

   3:25-cv-12912-SAL-SVH

2. ————————————————————————————————

3. v.

4. SOUTH CAROLINA STATE HOUSING FINANCE AND DEVELOPMENT AUTHORITY

5. And

6. D'ALBERTO, GRAHAM & GRIMSLEY, LLC,

7. Defendants.

8. ————————————————————————————————

9. Civil Action No.: _____

10.

11. **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND EQUITABLE RELIEF,**

12. **AND DAMAGES**

13. ————————————————————————————————

## 14.  NATURE OF THE ACTION

15. Plaintiff brings this federal action to enforce rights under federal consumer protection statutes, the Uniform Commercial Code, and the United States Constitution, arising from Defendants' unlawful attempts to foreclose on Plaintiff's property in Richland County, South Carolina.

16. This case arises from a transaction in which Plaintiff executed documents styled as a promissory note and mortgage. Defendants failed to provide mandatory disclosures under the **Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. pt. 1026,** including disclosure of the true creditor, the amount financed, and Plaintiff's right to rescind.

17.  Defendants also violated the **Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and Regulation X, 12 C.F.R. pt. 1024,** by failing to respond to Plaintiff's qualified written requests and by concealing a full accounting of payments, third-party proceeds, and servicing records.

18. Plaintiff further alleges that Defendants relied on **Mortgage Electronic Registration Systems ("MERS")** to fabricate assignments. Because MERS never owned the debt, such assignments are fraudulent and broke the chain of title, in violation of **U.C.C. §§ 3-301, 3-203** and federal precedent holding that the mortgage follows the note.

19. Defendants failed to provide lawful consideration. By monetizing Plaintiff's note instead of advancing money, Defendants extended credit without authority under **12 U.S.C. § 371** and thereby rendered the note and mortgage void for lack of consideration.

20. The note and mortgage are unilateral instruments bearing only Plaintiff's signature, lacking mutual assent as required under contract law and **U.C.C. § 3-305(a)(2)**. Because they are unilateral and unsupported by lawful consideration, they are void ab initio.

21. A discrepancy exists between the **Warranty Deed ($53,400.00)** and the **Note/Mortgage ($50,875.00)**, creating material misrepresentation in violation of **TILA, 15 U.S.C. § 1638(a)(2)(A)** and long-standing fraud principles.

22. Defendants further violated the **Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f**, by making false statements in foreclosure pleadings, misrepresenting creditor status, demanding amounts not authorized by law, and engaging in double-dipping—collecting from Plaintiff while also receiving proceeds from insurers, investors, and subsidies.

23. Plaintiff also asserts that foreclosure proceedings deprived her of property without **due process**, in violation of the **Fifth and Fourteenth Amendments**, and that state foreclosure procedures conflict with federal law in violation of the **Supremacy Clause, U.S. Const. art. VI, cl. 2**.

24. Plaintiff seeks declaratory relief voiding the note and mortgage, injunctive relief halting foreclosure, restitution of overpayments, statutory and treble damages, and such further equitable and legal relief as this Court deems proper.

25. Plaintiff seeks relief from Defendants' unlawful conduct in concealing securitization of Plaintiff's obligation into POOL 0000077-MRB Split (2020a/2020b).

# 26.  AUTHORITY

27. This Court has authority to hear this matter pursuant to **28 U.S.C. § 1331**, because the action arises under the **Constitution, laws, and treaties of the United States**, including the Truth in Lending Act (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Procedures Act (12 U.S.C. § 2605), the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), and the Due Process and Supremacy Clauses of the United States Constitution.

28. Venue is proper in this District under **28 U.S.C. § 1391(b)**, because the events and property at issue are located within the District of South Carolina, Columbia Division.

29. Plaintiff does not waive any rights or concede personal jurisdiction, but acknowledges that federal law provides a forum for addressing the violations alleged herein.

30. _____

## 31. PARTIES

32. **Defendant South Carolina State Housing Finance and Development Authority ("SC Housing")** is a state-created corporate entity headquartered in Columbia, South Carolina. SC Housing acted as the purported lender or assignee in connection with Plaintiff's mortgage transaction and directed or authorized foreclosure proceedings against Plaintiff's property.

33. **Defendant D'Alberto, Graham & Grimsley, LLC** ("DGG Law") is a law firm organized under the laws of South Carolina, with its principal office at **508 Meeting Street, West Columbia, South Carolina 29169.** DGG Law acted as foreclosure counsel for SC Housing, prepared and filed foreclosure pleadings, and represented itself as being authorized to enforce the note and mortgage.

34. At all times relevant, Defendants acted individually and in concert with one another and are jointly and severally responsible for the acts and omissions described herein.

## 35. DEFINITIONS

36. **"Assignment"** – *Black's Law Dictionary, 4th Ed.* defines assignment as "a transfer or setting over of property, or of some right or interest, by a written instrument." In the mortgage context, an assignment transfers only rights actually possessed. A fraudulent assignment conveys no rights.

37. **"Servicer"** – Under **12 U.S.C. § 2605(i)(2)**, a servicer is "the person responsible for receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan… and making the payments to the owner of the loan or other third parties." Servicers must comply with the Real Estate Settlement Procedures Act (RESPA) and respond to borrower inquiries.

38. **"Contract"** – *Black's Law Dictionary, 4th Ed.* defines a contract as "an agreement between competent parties, based upon a legal consideration, to do or refrain from doing some legal act." Essential elements are mutual assent and consideration. A unilateral document, signed only by one party, is not a valid contract.

39. **"Full Disclosure"** – Under the **Truth in Lending Act, 15 U.S.C. § 1638**, creditors are required to clearly and conspicuously disclose the amount financed, the finance charge, the annual percentage rate, the payment schedule, and the total of payments. Failure to disclose constitutes a material violation and impairs the borrower's rescission rights.

40. **"Holder in Due Course"** – As defined in **U.C.C. § 3-302**, a holder in due course is one who takes an instrument for value, in good faith, and without notice of defenses. A party who acquires an instrument through fraud, without consideration, or with knowledge of defects cannot claim holder-in-due-course status.

41. **"Note"** – *Black's Law Dictionary, 4th Ed.* defines a promissory note as "an unconditional written promise, signed by the maker, to pay absolutely and at all events a certain sum of money, either to the bearer or to a designated person." A note issued without lawful consideration is void.

42. **"Mortgage"** – *Black's Law Dictionary, 4th Ed.* defines a mortgage as "a conveyance of property, upon condition, as security for the payment of a debt." A mortgage is only valid where a lawful debt exists; absent a valid debt, the mortgage is a "dead pledge" and void.

43. **"Forgery/Fraudulent Document"** – *Black's Law Dictionary, 4th Ed.* defines forgery as "the false making or material alteration of any writing, with intent to defraud." Fraudulent assignments or affidavits filed in foreclosure constitute false documents under **18 U.S.C. § 1001**.

44. **"Debt Collector"** – The **Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6)**, defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects debts owed… to another." Attorneys engaged in foreclosure litigation fall within this definition. See *Heintz v. Jenkins*, 514 U.S. 291 (1995).

45. **"Due Process"** – The **Fifth and Fourteenth Amendments** guarantee that no person shall be deprived of property without due process of law, meaning fair notice and an opportunity to be heard at a meaningful time and in a meaningful manner. See *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

46. **Principal** – As defined in *Black's Law Dictionary (4th ed.)*, "the capital sum due on a debt, as distinguished from interest or other additions." In the context of mortgage servicing, "Principal" refers to the portion of Plaintiff's payment applied to reduce the original note balance.

47. **Interest** – Compensation for the use of borrowed money, usually expressed as a percentage rate per annum. Under the **Truth in Lending Act, 15 U.S.C. § 1638(a)(3)**, creditors are required to disclose the finance charge and annual percentage rate to the borrower.

48. **Escrow** – A portion of each monthly payment collected for future disbursements, such as property taxes or insurance. Under **12 U.S.C. § 2609 (RESPA)**, servicers must clearly disclose and properly apply escrow funds, and cannot retain surpluses beyond statutory limits.

49. **Fees** – Charges other than principal, interest, or escrow, often including late fees, service fees, or "risk-based pricing adjustments." Under **15 U.S.C. § 1692f(1)**, it is unlawful to collect any fee not expressly authorized by the agreement or permitted by law.

50. **Pool Number (POOL 0000077)** – A securitization designation appearing on Plaintiff's Transaction History (Exhibit F), identifying that Plaintiff's account was placed into a **Mortgage Revenue Bond (MRB) investment pool**. This converts the account into an investment security under **U.C.C. Article 8** and implicates third-party investor payments and credits that must be disclosed and applied.

51. **Payments** – *Black's Law Dictionary (4th ed.)* defines "payment" as "the performance of a duty, promise, or obligation, or the discharge of a debt or demand." In the mortgage servicing

context, "Payments" refers to funds tendered by Plaintiff in good faith toward the alleged debt. Under **12 U.S.C. § 2605(e) (RESPA)** and **U.C.C. § 3-602(a)**, all payments must be properly applied, credited, and accounted for, including those received from **third parties (investors, insurers, bond pools, or subsidies)**. Failure to do so results in unlawful collection, double recovery, and violations of federal law. Plaintiff further asserts that while Plaintiff has made good faith payments, Defendants have not shown **where any funds were originally advanced** to Plaintiff. Absent a ledger proving a true loan disbursement, Defendants are collecting on an obligation without consideration, contrary to **U.C.C. § 3-303 (value and consideration)**

52. **Property** – As defined in *Black's Law Dictionary (4th ed.)*, "that which is peculiar or proper to any person; the exclusive right of possessing, enjoying, and disposing of a thing." In this Complaint, "Property" refers specifically to the real property conveyed by Warranty Deed to Plaintiff for the consideration of **$53,400.00**, located in Richland County, South Carolina.

53. **Loan** – Defined in *Black's Law Dictionary (4th ed.)* as "a contract by which one delivers a sum of money to another and the latter agrees to return at a future time an equivalent sum." In the mortgage context, the alleged "Loan" must satisfy federal disclosure requirements under the **Truth in Lending Act, 15 U.S.C. § 1601 et seq.**, including full disclosure of **principal, interest, finance charges, and creditor identity. In this Complaint, Plaintiff asserts that no valid "Loan" contract exists unless Defendants can produce proof of consideration in the form of an actual ledger showing the disbursement of funds from their own accounts. Plaintiff maintains that Defendants have failed to establish that any actual loan funds were disbursed, and has repeatedly demanded production of a true and correct accounting ledger reflecting all disbursements and receipts. Defendants have refused or failed to produce such records**

# 54.  STATEMENT OF FACTS

55. On or about November 12, 2020, Plaintiff acquired real property located in Richland County, South Carolina. Title was conveyed by **Warranty Deed** for the sum of **$53,400.00**, duly recorded in the Richland County Register of Deeds. (Exhibit A)

56. Contemporaneous with the conveyance, Plaintiff was induced to sign a promissory note in the stated amount of **$50,875.00** and a mortgage securing repayment of the same. The discrepancy between the deed consideration and the note/mortgage amount was never explained and constitutes a material misrepresentation. (Exhibit B)

57. The note and mortgage were executed solely by Plaintiff; no authorized officer of SC Housing or any lender executed the instruments, rendering them **unilateral documents lacking mutual assent**. (Exhibit C)

58. Plaintiff did not receive full disclosure of the terms of credit as required by the **Truth in Lending Act, 15 U.S.C. § 1638**, including the true creditor, the total amount financed, the payment schedule, and the right to rescind.

59. Defendants monetized Plaintiff's promissory note and treated it as a negotiable instrument, without advancing lawful funds, in violation of **12 U.S.C. § 371** (prohibiting banks from lending credit rather than money).

60. The mortgage identified **Mortgage Electronic Registration Systems ("MERS")** as nominee. MERS never owned or possessed the note, and therefore lacked authority to assign or transfer any interest in the debt.

61. Despite this, an assignment of mortgage was later executed in the name of MERS, purporting to transfer rights to SC Housing or its agents. Such assignment is void, as MERS could not assign what it did not own. (Exhibit D)

62. The separation of the note and mortgage, and the reliance upon MERS assignments, broke the chain of title, leaving no lawful party entitled to enforce the instruments.

63. Thereafter, SC Housing, acting through foreclosure counsel **D'Alberto, Graham & Grimsley, LLC**, initiated foreclosure proceedings against Plaintiff in the Court of Common Pleas, Richland County, South Carolina, under Case No. 2025-CP-40-01660.

64. In those proceedings, Defendants filed affidavits and pleadings representing themselves as creditors or authorized agents, despite lacking standing or lawful evidence of ownership of the debt.

65. Plaintiff submitted written demands for a full accounting and validation of the debt pursuant to **RESPA, 12 U.S.C. § 2605(e)** and **FDCPA, 15 U.S.C. § 1692g**, requesting records of all payments, credits, and third-party proceeds. (Exhibit E)

66. Defendants failed and refused to provide the requested accounting, in violation of federal law.

67. Plaintiff has repeatedly requested that Defendants produce a **ledger or proof of consideration** establishing that an actual loan was funded by Defendants to Plaintiff. To date, no such evidence has been produced. Without such proof, the alleged note and mortgage lack lawful consideration and fail as enforceable contracts under **federal law and U.C.C. § 3-303**.

68. On information and belief, Defendants received payments from third parties, including insurance proceeds, federal subsidies, or securitization distributions, related to Plaintiff's loan. Defendants failed to disclose or credit these proceeds, while continuing to collect from Plaintiff, resulting in **double recovery**.

69. Plaintiff made good faith payments toward the alleged loan obligation, but Defendants misapplied or diverted those payments, inflating the alleged balance due. (Exhibit F)

70. Defendants sought to collect additional fees, charges, and foreclosure costs not authorized by the note or permitted by law, in violation of **15 U.S.C. § 1692f(1)**.

71. Defendants' reliance on copies of documents and hearsay affidavits, rather than producing the original wet-ink note, deprived Plaintiff of the ability to test the validity of the alleged debt and constituted improper evidentiary submissions.

72. The foreclosure proceedings placed Plaintiff at risk of losing her home without due process of law, in conflict with the **Fifth and Fourteenth Amendments**.

73. State foreclosure procedures, as applied by Defendants, conflicted with federal disclosure and consumer protection requirements, in violation of the **Supremacy Clause, U.S. Const. art. VI, cl. 2**.

74. "The SC State Housing Authority's 'Transaction History to Mortgagor' for Plaintiff's account lists at the top: **'POOL: 0000077 – MRB Split (2020a/2020b)'** (Exhibit F). This notation confirms that Plaintiff's account was placed into a Mortgage Revenue Bond pool for investors.

75. By pooling Plaintiff's account into POOL 0000077, Defendants converted the Note into an investment security governed by U.C.C. Articles 8 and 9, while concealing this fact from Plaintiff.

# 76.  COUNT I – Disclosure Violations (TILA and RESPA)

77. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

78. The **Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1635, 1638, 1640, and Regulation Z, 12 C.F.R. pt. 1026**, require creditors to disclose the identity of the true lender, the amount financed, the finance charge, the annual percentage rate, the payment schedule, and the borrower's right to rescind.

79. Defendants failed to provide these required disclosures to Plaintiff at the time of closing, thereby impairing Plaintiff's statutory right to rescind the transaction under **15 U.S.C. § 1635(a)**.

80. Defendants further misstated or concealed the true amount financed, as evidenced by the discrepancy between the Warranty Deed ($53,400.00) and the Note/Mortgage ($50,875.00). This constituted a material violation of **15 U.S.C. § 1638(a)(2)(A)**.

81. Under **15 U.S.C. § 1640(a)**, creditors who fail to comply with TILA are liable for statutory and actual damages, as well as rescission in appropriate cases.

82. The **Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605**, and **Regulation X, 12 C.F.R. §§ 1024.35–36**, require servicers to provide accurate accountings and to respond to written borrower inquiries.

83. Plaintiff submitted written qualified requests for a full accounting under **12 U.S.C. § 2605(e)**, demanding identification of the true creditor, all payments received, and application of those payments. (Exhibit E)

84. Defendants failed and refused to respond, in violation of **RESPA**, causing Plaintiff harm. See *Sierra v. Indymac Bank, FSB*, 863 F. Supp. 2d 1009 (N.D. Cal. 2012).

85. As a direct and proximate result of these disclosure violations, Plaintiff suffered financial injury, was deprived of her right to rescind, and was exposed to wrongful foreclosure.

86. Defendants failed to disclose that Plaintiff's loan was placed into **POOL 0000077 – MRB Split (2020a/2020b)**, as evidenced on the face of the servicing ledger. (Exhibit F)

87. The Supreme Court has held that failure to comply with TILA disclosure requirements creates strict liability. *Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998).*

88. The First Circuit has held that securitization and hidden transfers without borrower disclosure raise cognizable claims. *Culhane v. Aurora Loan Servs., 708 F.3d 282, 293 (1st Cir. 2013).*

**89. Relief Requested ( Count I)**
90. Plaintiff requests a declaratory judgement that Defendants violated TILA and RESPA; statutory damages of $2,000.00 per violation under 15 U.S.C. § 1640(a)(2)(A)(i); actual damages including overpayments; rescission of the note and mortgage; and an injunction preventing foreclosure until proper accounting and disclosures are made.

# 91.    COUNT II – MERS Chain-of-Title Break and Fraudulent Assignments

92. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

93. On or about November 12, 2020, Plaintiff executed a Warranty Deed for $53,400.00 (EXHIBIT A), and was induced to sign a Promissory Note in the amount of $50,875.00 (EXHIBIT B), secured by a Mortgage executed solely by Plaintiff (EXHIBIT C).

94. The alleged mortgage on Plaintiff's property identified **Mortgage Electronic Registration Systems ("MERS")** as nominee. MERS never owned or possessed the promissory note, nor had any beneficial interest in the underlying debt.

95. Despite lacking ownership, MERS executed and recorded assignments of the mortgage purporting to transfer enforcement rights to other entities, including Defendant SC Housing. (EXHIBIT D)

96. Under the **Uniform Commercial Code, U.C.C. §§ 3-301 and 3-203**, only a person entitled to enforce the note may transfer or enforce it. Because MERS never held the note, its assignments were void ab initio.

97. Courts have recognized that MERS cannot assign or transfer rights it does not own. See *In re Veal*, 450 B.R. 897, 912–13 (B.A.P. 9th Cir. 2011).

98. The United States Supreme Court has long held that "the mortgage follows the note." *Carpenter v. Longan*, 83 U.S. 271, 274–75 (1872). Separation of the note and mortgage renders the mortgage unenforceable.

99. By recording false assignments executed by MERS, Defendants introduced fraudulent documents into the public land records, constituting false statements in violation of **18 U.S.C. § 1001** and deceptive practices under the **FDCPA, 15 U.S.C. § 1692e**. (Exhibit D)

100.    As a direct and proximate result of these fraudulent assignments and chain-of-title breaks, Plaintiff suffered clouded title, exposure to unlawful foreclosure, financial harm, and injury to property rights, and is entitled to relief as provided by law.

101.    Numerous courts have found that MERS, as a mere nominee, cannot assign an interest it does not own. *Culhane v. Aurora Loan Servs., 708 F.3d 282, 293 (1st Cir. 2013)*("MERS's role as nominee does not grant it the right to transfer beneficial interests in the note.")

102.    Without a valid assignment, Defendants cannot establish a lawful chain of title to the Note and Mortgage, depriving them of standing to foreclose or collect.

**103.    Relief Request (Count II)**
104.    Plaintiff requests a declaratory judgement that MERS assignment (Exhibit D) is void ab initio; removal of all fraudulent assignments from the public record; statutory damages under FDCPA; and injunctive relief enjoining Defendants relying on fraudulent documents in any foreclosure proceeding.

# 105. Count III – Failure of Consideration and Lack of Loan Disbursement

106.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

107.    Under basic contract law, a contract is unenforceable absent consideration. Black's Law Dictionary (4th ed.) defines consideration as "the inducement to a contract; the cause, motive, price, or impelling influence which induces a contracting party to enter into a contract."

108.    Plaintiff executed a Promissory Note (EXHIBIT B) and Mortgage (EXHIBIT C), but Defendants have never produced any proof that they delivered value or consideration in exchange.

109.    Specifically, Plaintiff has repeatedly demanded a general ledger, wire confirmation, cancelled check, or other proof of loan disbursement from Defendants' accounts showing that funds were advanced to Plaintiff. Defendants have refused or failed to produce such proof (EXHIBIT E).

110.    U.C.C. § 3-303(b) provides that an instrument is issued or transferred for value only if consideration is given. An instrument without proof of consideration is unenforceable.

111.   Banks are authorized to make loans of lawful money but may not lend their own credit. See **12 U.S.C. § 371**.

112.   Defendants did not advance actual funds to Plaintiff at closing. Instead, Defendants monetized Plaintiff's promissory note by treating it as a negotiable instrument, thereby creating the very funds alleged to be loaned.

113.   Because no lawful money was advanced, the alleged transaction lacked **consideration**, an essential element of a valid contract. See *Reeve v. Ladies' Bldg. Ass'n*, 56 F. 850, 853 (6th Cir. 1893) (instruments unsupported by consideration are void).

114.   Federal courts have recognized that banks may not lawfully "lend credit" as opposed to actual funds. See *First Nat'l Bank v. Daly*, 348 F. Supp. 1321, 1323 (D. Minn. 1972).

115.   The absence of consideration rendered both the promissory note and the mortgage illusory contracts and voidable under state and federal contract law principles.

116.   By attempting to enforce these void instruments, Defendants misrepresented the existence of a lawful debt, in violation of the **Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A)** (prohibiting misrepresentation of the character or legal status of a debt).

117.   As a direct and proximate result of these violations, Plaintiff was induced into a fraudulent transaction, deprived of her property rights, and exposed to unlawful foreclosure, and is entitled to relief as provided by law.

118.   Courts have held that mere possession of a promissory note does not establish that the note was funded or supported by consideration. See *In re Weisband, 427 B.R. 13, 19 (Bankr. D. Ariz. 2010)* (possession of note insufficient to establish right to enforce absent proof of transfer and consideration).

119.   **Relief Requested (Count III)**

120.   Plaintiff requests declaratory judgment that the Note and Mortgage are void for lack of consideration; an order compelling Defendants to produce a complete accounting ledger of any alleged loan disbursement; statutory damages under FDCPA; and rescission of the alleged loan instrument.

# 121. COUNT IV – Unilateral Documents and Lack of Mutual Assent

122.   Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

123.   A valid and enforceable contract requires **mutual assent (meaning both parties are bound to perform)** and **consideration** between competent parties. See *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006).

124. Black Laws Dictionary (4th ed.) defines a unilateral contract as one where only one party makes a promise or undertakes an obligation.

125. The promissory note and mortgage in this case bear only Plaintiff's signature. No authorized officer or representative of SC Housing, or any lender, executed these instruments.

126. Because the instruments were executed solely by Plaintiff, they are **unilateral documents** and lack the mutual agreement necessary to form a valid contract under federal contract law principles.

127. The absence of mutual assent and consideration renders the instruments void ab initio.

128. Despite this defect, Defendants have attempted to enforce the instruments as though they were valid contracts, misrepresenting their legal effect in violation of the **Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A).**

129. Courts have recognized that unilateral contracts lacking mutuality are unenforceable. *Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir 1997)* ("A contract that binds one party but not the other lacks mutuality and is unenforceable.")

130. Without mutual assent or reciprocal obligation, the Note and Mortgage fail as contracts under federal contract principles and the U.C.C. Articles 3 and 9 governing negotiable instruments and secured transactions.

131. As a direct and proximate result of these unlawful attempts to enforce unilateral documents, Plaintiff has suffered financial harm, clouded title, and exposure to wrongful foreclosure, and is entitled to relief as provided by law.

**132. Relief Requested (Count IV)**
133. Plaintiff requests declaratory judgment that the Note and Mortgage are void as unilateral instruments lacking mutuality; statutory damages under FDCPA; and injunction prohibiting Defendants from enforcing instruments that were never mutual contracts.

# 134. COUNT V – Defenses and Violations Under the Uniform Commercial Code (Articles 1–9)

135. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

136. Under **U.C.C. § 1-201(b)(3), (b)(21),** "agreement" and "consideration" are essential to a valid contract. Defendants failed to provide lawful consideration, rendering the instruments void.

80. Under **U.C.C. § 1-308,** Plaintiff has the right to reserve rights and perform under protest without waiving defenses.

137. A contract for sale requires both parties' assent and consideration. By analogy, Defendants attempted enforcement without meeting the baseline requirements for lawful contracts.

138.   Under **U.C.C. § 3-104**, an instrument must contain an unconditional promise to pay. The alleged note was not unconditional and lacked consideration.

139.   Under **U.C.C. § 3-301**, only a "person entitled to enforce" may enforce a note. Because the Note was securitized and transferred into POOL 0000077, Defendants must prove standing through chain of transfers under U.C.C. §§ 3-203, 9-203, and 9-210.

140.   Under **U.C.C. § 3-302**, Defendants cannot claim holder in due course status because they took with notice of defects.

141.   Under U.C.C. § 3-303(b), an instrument is issued or transferred for value only if consideration is given. Defendants have not produced any proof of consideration or loan disbursement ledger despite Plaintiff's written request (EXHIBIT E).

142.   Under **U.C.C. § 3-305**, Plaintiff may assert defenses of fraud, lack of consideration, and illegality against enforcement.

143.   Under **U.C.C. § 3-309**, enforcement of a lost or destroyed instrument requires proof of entitlement and adequate protection — which Defendants have not provided.

144.   Under **U.C.C. § 3-501(b)(2),** a debtor may demand production of the original instrument. Plaintiff demanded the wet-ink note; Defendants failed.

145.   Failure to present the original Note, supported by proof of value given, violates U.C.C. §§ 3-301, 3-309, and 3-501(b)(2), which require production of the original instrument for enforcement. Copies or hearsay declarations are insufficient. See *in re Veal, 450 B.R. 897, 912-13 (B.A.P. 9th Cir. 2011)*

146.   Instruments deposited with banks must be handled according to Article 4 standards. By monetizing Plaintiff's note without her consent, Defendants effectively converted her signature into a deposit item.

147.   Unauthorized electronic transfers, including securitization settlements, fall under Article 4A. Defendants failed to disclose such transfers and proceeds to Plaintiff.

148.   By analogy, enforcement of instruments must meet strict compliance. Defendants relied on defective and fraudulent documents that fail U.C.C. strict compliance standards.

149.   Transfers of pooled loan obligations, such as securitizations, constitute bulk transfers. Defendants failed to comply with disclosure obligations inherent in such transfers.

150.   Mortgage assignments function as documents of title to debt. Fraudulent assignments recorded by MERS and others were void and transferred no rights under **U.C.C. § 7-503**.

151.   The use of MERS as an alleged intermediary breaks the chain of custody. As held in *Culhane v. Aurora Loan Servs., 708 F.3d 282, 293 (1st Cir. 2013),* MERS has no beneficial interest in the note and cannot assign ownership.

152.   Plaintiff's note was securitized, making it an investment security. Defendants failed to disclose its securitization, violating **U.C.C. § 8-104** and depriving Plaintiff of knowledge of material facts.

153.   Under **U.C.C. § 9-203(b)**, a security interest attaches only if value is given, the debtor has rights in the collateral, and there is an authenticated security agreement. Defendants gave no value; thus, no valid security interest attached.

154.    Under **U.C.C. § 9-210**, a debtor may demand an accounting of the obligation. Plaintiff made such demands, but Defendants refused.

155.    Without lawful attachment or perfection, Defendants lack standing to enforce the mortgage or foreclose on the property.

156.    As a direct and proximate result of these violations across **Articles 1 through 9 of the U.C.C.,** Defendants cannot lawfully enforce the note or mortgage, and Plaintiff is entitled to relief as provided by law.

157.    The presence of the **POOL 0000077** designation on Plaintiff's servicing ledger (Exhibit F) demonstrates securitization and assignment into pooled interests, invoking U.C.C. Articles 8 and 9.

158.    Mortgage securitization requires a Pooling and Servicing Agreement (PSA), Which governs the rights of investors and the duties of servicers in administering pooled loans. Plaintiff was never a party to nor given disclosure of a PSA or pooling agreement connected to POOL 0000077.

159.    By securitizing Plaintiff's obligation into POOL 0000077 without disclosure, Defendants also violated federal consumer protection laws, including TILA (15 U.S.C. § 1638) and RESPA (12 U.S.C. § 2605), by failing to disclose the true creditor and pooling structure.

160.    Continued collection efforts while concealing third-party investor payments and pooling proceeds constitute unlawful double recovery in violation of U.C.C. § 3-602(a) and 15 U.S.C. § 1692f(1).

**161.    Relief Requested (Count V)**

162.    Plaintiff request declaratory judgement that Defendants' instruments are unenforceable under U.C.C. Articles 1-9; an order compelling full disclosure of all pooling and servicing agreements connected to POOL 0000077; production of the original Note and proof of value given; statutory damages for violations of FDCPA, TILA, and RESPA; and injunctive relief barring foreclosure until Defendants prove lawful standing under the U.C.C.

# 163. COUNT VI – Warranty Deed Discrepancy and Misrepresentation

164.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

165.    On November 12, 2020, the property was conveyed to Plaintiff by **Warranty Deed** for the consideration of **$53,400.00**. (Exhibit A)

166.    On the same date, Plaintiff was induced to sign a **Note and Mortgage** in the stated amount of **$50,875.00**. (Exhibit B)

167.    The discrepancy of $2,525.00 between the deed consideration and the note/mortgage amount constitutes a material misrepresentation and failure of disclosure.

168.    Defendants have filed foreclosure pleading in the Richland County Court of Common Pleas, Case No. 2025-CP-40-01660, relying on false, misleading, or incomplete documents, including assignments by MERS (Exhibit D) and uncertified copies of the Note and Mortgage.

169.    Introducing false or incomplete documents into a judicial proceeding constitutes fraud on the court and violates 18 U.S.C. § 1001 (false statements within jurisdiction of government), as well as 15 U.S.C. § 1692e(2)(A) (false representative of the character, amount, or legal status of a debt).

170.    Under the **Truth in Lending Act, 15 U.S.C. § 1638(a)(2)(A),** creditors must clearly and accurately disclose the "amount financed." Defendants' concealment or misrepresentation of the true consideration violated this requirement.

171.    Courts have consistently held that foreclosure plaintiffs must prove both ownership of the note and authority to enforce. *In re Veal, 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011)* ("A party seeking relief must establish that it has standing, including possession of the note and the right to enforce it").

172.    Federal law recognizes that fraud vitiates all contracts. See *United States v. Throckmorton*, 98 U.S. 61, 64 (1878) ("There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments.").

173.    By misstating the true consideration exchanged, Defendants induced Plaintiff into executing instruments under false pretenses.

174.    By filing documents that fail to prove ownership, consideration, or proper chain of title, Defendants have misled both Plaintiff and the Court.

175.    Plaintiff asserts Defendants' reliance on hearsay documents and unauthenticated copies, rather than producing the original note and loan ledger, constitutes intentional misrepresentation and fraud.

176.    As a direct and proximate result, Plaintiff was harmed through overpayment obligations, exposure to foreclosure on false terms, and impairment of her property rights, and is entitled to relief as provided by law.

**177.    Relief Requested (Count VI)**

178.    Plaintiff request declaratory judgement that Defendants have committed fraud upon the court by filing false or misleading documents; that any foreclosure relying on fraudulent documents be voided; statutory damages under FDCPA; and an injunction prohibiting further foreclosure proceedings until Defendants produce valid, original, authenticated evidence of standing.

## 179. COUNT VII – No-Contract Mortgage ("Dead Pledge")

180.   Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

181.   A **contract** requires offer, acceptance, consideration, and mutual assent. *Black's Law Dictionary (4th ed.)* defines a contract as "an agreement between competent parties, upon a legal consideration, to do or abstain from doing some lawful act."

182.   The promissory note and mortgage were executed only by Plaintiff, and no authorized party for SC Housing or any lender signed them. As such, the instruments are **unilateral documents**, lacking mutual assent and failing to meet the essential requirements of a valid contract. (Exhibit C)

183.   By inducing Plaintiff to sign instruments without disclosing material facts, Defendants committed fraud in the inducement, rendering the contract voidable. *McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996) (*A party fraudulently induced into a contract may rescind.").

184.   Under **Restatement (Second) of Contracts § 17**, the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration. Neither element was satisfied here.

185.   Federal law recognizes that **fraud and failure of consideration vitiate contracts**. See *United States v. Throckmorton*, 98 U.S. 61, 64 (1878) ("Fraud vitiates the most solemn contracts, documents, and even judgments.").

186.   The mortgage itself, by definition, is a **"dead pledge"** — a conveyance of property as security for a debt. *Carpenter v. Longan*, 83 U.S. 271, 274 (1872), established that "the note and mortgage are inseparable; the mortgage is a mere incident, and cannot be transferred apart from the note." Because the underlying note was void, the mortgage is also void.

187.   Defendants' reliance on these unilateral and unsupported documents amounts to a misrepresentation of their legal effect in violation of the **Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A)**.

188.   Courts have consistently held that where mutual assent or consideration is lacking, no enforceable obligation exists. See *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006); *Reeve v. Ladies' Bldg. Ass'n*, 56 F. 850 (6th Cir. 1893).

189.   The absence of consideration also triggers defenses under **U.C.C. § 3-305(a)(2)**, which permits obligors to assert fraud, illegality, or lack of consideration as a defense against enforcement.

190.　By attempting to enforce a mortgage without a valid note and without any lawful contract, Defendants sought to deprive Plaintiff of her property without due process of law, in violation of the **Fifth and Fourteenth Amendments**.

191.　As a direct and proximate result of these defects, Plaintiff has been subjected to false claims of indebtedness, wrongful foreclosure proceedings, and clouded title, and is entitled to relief as provided by law.

**192.　Relief Requested (Count VII)**

193.　Plaintiff requests declaratory judgement that the Note and Mortgage are void for failure of disclosure, fraud in the inducement, and lack of consideration; rescission of the alleged loan under 15 U.S.C. § 1635; statutory damages under TILA, RESPA, and FDCPA; and injunctive relief preventing Defendants from collecting or foreclosing absent full disclosure and proof of consideration.

194.　

## 195. COUNT VIII – Improper Application of Payments, Overpayments, and Damages

196.　Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

197.　Plaintiff made monthly payments in good faith under the belief that they would be properly credited to reduce the balance of the alleged obligation. (Exhibit F)

198.　Defendants failed to properly credit or apply Plaintiff's payments, instead misallocating, diverting, or retaining them in a manner that inflated the balance and created a false appearance of default.

199.　Under the **Truth in Lending Act, 15 U.S.C. § 1640(a)**, creditors are liable for damages when payments are misapplied or when required disclosures about payment allocation are withheld.

200.　The **Real Estate Settlement Procedures Act, 12 U.S.C. § 2605**, and **Regulation X, 12 C.F.R. §§ 1024.35–36**, require servicers to accurately account for all borrower payments and respond to Notices of Error. Plaintiff made such written demands, but Defendants refused or failed to respond.

201.　On information and belief, Defendants also received **third-party proceeds** — including insurance payouts, government subsidies, or securitization distributions — but concealed them and failed to credit these proceeds to Plaintiff's account.

202.　Concealment of credits and proceeds constitutes a deceptive practice in violation of the **Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A)**, which prohibits misrepresentations about the character, amount, or legal status of a debt.

203.    Courts have recognized liability where servicers misapply payments or conceal proceeds. See *Sierra v. Indymac Bank, FSB*, 863 F. Supp. 2d 1009 (N.D. Cal. 2012).

204.    As a direct and proximate result of these misapplications and concealments, Plaintiff suffered overpayments, inflated debt balances, wrongful foreclosure exposure, and financial injury, and is entitled to relief as provided by law.

**205.    Relief Requested (Count VIII)**

206.    Plaintiff requests declaratory judgment that Defendants failed to properly credit payments; statutory damages under RESPA and FDCPA; actual damages for overpayments and misapplication; and injunctive relief requiring Defendants to produce a corrected loan ledger and cease collection efforts until all payments are accurately applied and credited.

# 207. COUNT IX – Double-Dipping: Third-Party Proceeds Plus Borrower Collections

208.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

209.    On information and belief, Defendants or their agents received **third-party proceeds** connected to Plaintiff's alleged obligation, including but not limited to: (a) mortgage insurance payouts; (b) federal or state subsidy payments; (c) advances from securitization trustees or investors; and (d) other recoupments or offsets.

210.    Despite receiving these proceeds, Defendants continued to demand and collect the same sums from Plaintiff, thereby engaging in **double recovery**.

211.    Such conduct constitutes **unjust enrichment** under federal common-law principles, as Defendants were compensated twice for the same obligation at Plaintiff's expense.

212.    Under the **Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A)**, it is unlawful to misrepresent the character, amount, or legal status of a debt. Collecting sums already satisfied by third-party payments constitutes such misrepresentation.

213.    It is further unlawful under **15 U.S.C. § 1692f(1)** to collect "any amount" not expressly authorized by agreement or permitted by law.

214.    The **Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)**, and **Regulation X, 12 C.F.R. § 1024.35**, require servicers to provide accurate accountings upon borrower request. Defendants' refusal to disclose third-party credits violated these obligations.

215.    Under **U.C.C. § 3-602(a)**, payment of an instrument discharges the obligation to the extent of the payment. By failing to credit third-party proceeds, Defendants acted contrary to this provision and inflated the balance.

216. Courts recognize that failing to apply or disclose third-party payments is actionable. See *In re Jones*, 366 B.R. 584, 594 (Bankr. E.D. La. 2007) (failure to credit insurance proceeds and advances constituted improper servicing).

217. As a direct and proximate result of Defendants' concealment of third-party payments and double collection efforts, Plaintiff was forced into overpayment, wrongful foreclosure exposure, and financial injury, and is entitled to relief as provided by law.

218. Because Plaintiff's account is administered in **POOL 0000077 – MRB Split (2020a/2020b)** (Exhibit **F**), Defendants and/or their principals may receive **bond proceeds, investor advances, insurance, or other third-party funds** tied to this account. Under **U.C.C. § 3-602(a)** and **RESPA**, those proceeds must be credited to reduce the obligation.

219. Defendants continued to **collect the same sums** from Plaintiff while failing to disclose or credit third-party proceeds associated with the pool, thereby **inflating the balance** and engaging in **double recovery**, in violation of **15 U.S.C. §§ 1692e(2)(A), 1692f(1)** and **12 U.S.C. § 2605**.

220. Because Plaintiff's account is administered in POOL 0000077 – MRB Split (2020a/2020b) (Exhibit F), Defendants and/or their principals may receive bond proceeds, investor advances, insurance, or other third-party funds tied to this account. Under U.C.C. § 3-602(a) and RESPA, those proceeds must be credited to reduce the obligation.

221. Defendants continued to collect the same sums from Plaintiff while failing to disclose or credit third-party proceeds associated with the pool, thereby inflating the balance and engaging in double recovery, in violation of 15 U.S.C. §§ 1692e(2)(A), 1692f(1) and 12 U.S.C. § 2605.

**222. Relief Requested (Count IX)**

223. Plaintiff requests declaratory judgement that Defendants engaged in double-dipping and unjust enrichment; an order requiring full disclosure of all third-party payments related to POOL 0000077; statutory damages under FDCPA; restitution of overpayments; and injunctive relief barring further collection or foreclosure absent full crediting of all payments received from any source.

## 224. COUNT X – False Statements and Misrepresentation in Collection and Foreclosure

225. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

226. Defendants, including their foreclosure counsel, prepared and filed documents in state foreclosure proceedings that contained false statements regarding creditor status, ownership of the note, and the amounts allegedly owed.

227. The **Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e**, prohibits debt collectors from using any false, deceptive, or misleading representation in connection with the collection of a debt.

228.    Specifically, **15 U.S.C. § 1692e(2)(A)** prohibits misrepresenting the character, amount, or legal status of a debt, and **§ 1692e(5)** prohibits threatening to take action that cannot legally be taken.

229.    Attorneys engaged in foreclosure proceedings are subject to the FDCPA. See *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (holding that attorneys collecting debts through litigation are "debt collectors" under the FDCPA).

230.    The filing and use of fraudulent assignments and defective affidavits also constitute **false statements** within the meaning of **18 U.S.C. § 1001**, which makes it unlawful to knowingly and willfully make materially false statements or use false writings in matters within the jurisdiction of the government, including county recording systems.

231.    Courts have recognized FDCPA liability for attorneys and servicers who misrepresent amounts owed or creditor status in foreclosure pleadings. See *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581–82 (2010) (holding that a mistaken interpretation of law does not shield a debt collector from FDCPA liability).

232.    By introducing and relying on false documents, Defendants deprived Plaintiff of a fair and lawful process, clouded Plaintiff's title, and exposed Plaintiff to wrongful foreclosure.

233.    As a direct and proximate result of these false statements and misrepresentations, Plaintiff suffered financial injury, litigation costs, and harm to property rights, and is entitled to relief as provided by law.

**234.    Relief Requested (Count X)**
235.    Plaintiff requests declaratory judgment that Defendants engaged in fraudulent misrepresentation; damages for fraud under applicable federal and state law; statutory damages under FDCPA; and injunctive relief prohibiting Defendants from making further false statements or pursuing foreclosure based on fraudulent documents.

# 236. COUNT XI – Unlawful Collection of Amounts Not Authorized by Law or Agreement

237.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

238.    Defendants attempted to collect amounts not expressly authorized by the alleged note or mortgage and not permitted by law, including inflated fees, foreclosure costs, late charges, and other unsubstantiated sums.

239.    The **Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(1)**, prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

240.    Defendants' attempts to collect unauthorized sums also violated **15 U.S.C. § 1692e(2)(A)**, which prohibits misrepresenting the character, amount, or legal status of a debt.

241.    Under the **Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e)**, and **12 C.F.R. § 1024.35**, servicers are required to respond to borrower disputes and Notices of Error concerning loan accountings. Plaintiff sent such notices demanding explanation of unauthorized charges, but Defendants failed or refused to correct or substantiate them.

242.    Loan servicers and housing authorities owe a duty of good faith and fair dealing to "borrowers" under federal law, including disclosure, accurate accounting, and lawful servicing. See *Restatement (Second) of Contracts § 205 (*every contract imposes upon each party a duty of good faith and fair dealing).

243.    Under 12 U.S.C.§ 2605(k)(1)(C) (RESPA), a servicer must take timely action to respond to "borrowers" requests to correct errors relating to allocation of payments, final balances, and avoidance of foreclosure. Defendants' refusal to account violates this statutory duty.

244.    Courts recognize liability for attempting to collect unauthorized fees in mortgage servicing and foreclosure. See *McWhorter v. Ocwen Loan Servicing, LLC*, 2017 WL 3315375 (N.D. Ala. Aug. 3, 2017) (denying dismissal of FDCPA claim where unauthorized charges were demanded).

245.    Courts also recognize that fiduciary duties may arise where one party is entrusted with funds and accounting responsibilities. *Perry v. Stewart Co., 756 F.2d 1197, 1208 (5th Cir. 1985)*(Mortgage servicer liable for improper accounting and disbursements).

246.    By seeking to collect amounts beyond what the law or any valid contract permits, Defendants engaged in unfair and deceptive debt collection practices and violated federal servicing obligations.

247.    As a direct and proximate result of these unlawful collection efforts, and bad faith Plaintiff was overcharged, placed under wrongful foreclosure pressure, and forced to defend against inflated claims, and is entitled to relief as provided by law.

**248.    Relief Requested (Count XI)**
249.    Plaintiff request declaratory judgment that Defendants breached fiduciary duties and the duty of good faith; statutory damages under RESPA; restitution of all misapplied payments; and injunctive relief requiring Defendants to provide a full and accurate accounting ledger and to cease collection or foreclosure until they demonstrate compliance with their fiduciary and statutory duties.

## 250. COUNT XII – Constitutional Due Process and Supremacy Clause Violations

251.    Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

252.    The **Fifth Amendment** to the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.

253.    The **Fourteenth Amendment** extends the same protection against state action, requiring fair notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

254.    Defendants pursued foreclosure proceedings against Plaintiff without establishing standing, without producing the original note, and without complying with federal disclosure requirements, thereby attempting to deprive Plaintiff of property without due process.

255.    The Supreme Court has held that due process requires notice reasonably calculated to apprise interested parties of the pendency of action and afford them an opportunity to present objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

256.    Defendants' reliance on fraudulent assignments, unilateral documents, and misrepresentations deprived Plaintiff of meaningful due process and denied Plaintiff a fair opportunity to contest the claims.

257.    Furthermore, the **Supremacy Clause, U.S. Const. art. VI, cl. 2**, provides that the Constitution and laws of the United States are the "supreme Law of the Land."

258.    State foreclosure procedures, as applied here, conflict with and are preempted by federal statutes including the Truth in Lending Act (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Procedures Act (12 U.S.C. § 2605), and the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.).

259.    The Supreme Court has held that state law must yield when it conflicts with federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000).

260.    By attempting to enforce foreclosure in disregard of these federal protections, Defendants acted under color of state law to deprive Plaintiff of constitutionally protected property rights.

261.    As a direct and proximate result of these constitutional violations, Plaintiff has suffered loss of rights, imminent threat of wrongful foreclosure, and continuing injury, and is entitled to relief as provided by law.

**Relief Requested (Count XII)**
Plaintiff requests a declaratory judgment that Defendants lack standing to enforce the Note and Mortgage, that the instruments are void for lack of Consideration and disclosure, and that assignments by MERS are invalid.

Plaintiff further requests a permanent injunction prohibiting Defendants from pursuing foreclosure or collection activities unless and until they produce the original Note, proof of loan disbursement, full accounting including application of all payments and third-party proceeds, and disclosure of all pooling and servicing agreements related to POOL 0000077.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against Defendants, jointly and severally, and requests that this Court grant the following relief:

a. **Declaratory Relief**:

- A declaration that the promissory note and mortgage are void and unenforceable due to lack of consideration, unilateral execution, fraudulent assignments, and violations of federal law;
- Declare that the assignments of mortgage executed by MERS(Exhibit D) are void ab initio and confer no right;
- Declare that Defendant lacks standing to enforce or foreclose upon the property absent production of the original note, proof of loan disbursement, and full accounting.
- Declare that Defendants violated Plaintiff's rights under TILA, RESPA, FDCPA, and the U.C.C.

b. **Injunctive Relief**:

- prohibiting Defendants, their agents, or successors from pursuing foreclosure, eviction, or any further collection activity related to the alleged obligation without proof of lawful authority consistent with federal law, and production of:
- The original Note
- A true and correct loan disbursement ledger
- Disclosure of pooling and servicing agreements for POOL 0000077
- And full accounting of all payments including third-party proceeds;

c. **Accounting**:

- Loan origination
- Any funding or consideration given
- All payments made by plaintiff
- All payments received from third-parties, investors, or insurers related to POOL 0000077
- Including insurance proceeds, government subsides, and securitization revenues

d. **Rescission**:

- Rescind the Note and Mortgage pursuant to TILA 15 U.S.C. § 1635 and order their removal from the county land records.
- Alternatively, reform the instruments to reflect only sums lawfully due, if any. After crediting all payments and offsets

**e. Restitution and Disgorgement**:

- Restitution of overpayments and disgorgement of all sums collected unlawfully from Plaintiff;

**f. Statutory Damages**:

- Award actual damages in the form of overpayments, misapplied funds, unjust enrichment, and harm to credit and reputation
- Truth in Lending Act (15 U.S.C. § 1640),
- Real Estate Settlement Procedures Act(12 U.S.C. § 2605(f)),
- Fair Debt Collection Practices Act (15 U.S.C. § 1692k);

**g. Treble Damages**:

- Willfully violations of federal law, including disclosure violations
- Award treble damages where authorized by law, including fraud and willful statutory violations
- Unlawful debt collection

**h. Constitutional Relief**:

- Ruling Defendants' actions violated Plaintiff's rights
- Fifth and Fourteenth Amendment violation
- State foreclosure procedures confliction federal statutes; preempted under Supremacy Clause

**i. Costs and Fees**:

- Litigation costs
- Reasonable attorneys fee

**j. Such Other Relief**: Such other and further legal and equitable relief as the Court may deem just and proper.

## LIST OF EXHIBITS

- **Exhibit A** – General Warranty Deed conveying title to Plaintiff for the consideration of **$53,400.00**, recorded in the Richland County Register of Deeds.
- **Exhibit B** – Promissory Note executed on or about November 12, 2020, in the stated amount of **$50,875.00**.
- **Exhibit C** – Mortgage executed solely by Plaintiff, offered as purported security for the alleged Note.
- **Exhibit D** – Assignment of Mortgage executed in the name of **Mortgage Electronic Registration Systems (MERS),** purporting to transfer rights without ownership of the underlying Note.
- **Exhibit E** – Plaintiff's written demand(s) for a full accounting and validation of the alleged obligation, submitted pursuant to federal law.
- **Exhibit F** – SC State Housing Authority **"Transaction History to Mortgagor"** ledger, showing Plaintiff's payment entries and identifying securitization **POOL: 0000077 – MRB Split (2020a/2020b)** at the top of the record.
-

# VERIFICATION AND SIGNATURE

Created on this 8th day of October, *2025*.

I, Contrina Lacretrica Bell, in my private capacity and as Trustee of the Divine Stewardship Trust for the House of Bell, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on October 8, 2025.

Respectfully submitted,

By:

Contrina Lacretrica Bell
in her private capacity and as Trustee of the
Divine Stewardship Trust for the House of Bell
c/o 115 Sunny Acres Drive
Eastover, South Carolina 29044
Telephone: Currently unavailable
Email: Currently unavailable